**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,  )
*ex rel.* TODD HEATH, *et al.*  )
                                                      )    Civil Case No. 1:11-cv-01897-RIL
                    Plaintiffs/Relator,  )
                                                      )    Judge Richard J. Leon
            v.                                      )
                                                      )    **Oral Argument Requested**
AT&T, INC., *et al.*                    )
                                                      )
                    Defendants.          )

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS RELATOR'S COMPLAINT**

David F. Dowd
Mayer Brown LLP
1999 K Street, Northwest
Washington, DC 20006
(202) 263-3000 (phone)
(202) 263-3300 (fax)

Michael J. Gill
(to be admitted *pro hac vice*)
Demetrios G. Metropoulos
(to be admitted *pro hac vice*)
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone (312) 782-0600
Facsimile (312) 701-7711

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

    I.     THE E-RATE PROGRAM .................................................................................. 2

    II.    THE ALLEGATIONS OF THE COMPLAINT .................................................. 4

    III.   RELATOR ............................................................................................................ 5

ARGUMENT ......................................................................................................................... 6

    I.     THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF
         JURISDICTION UNDER THE FIRST-TO-FILE BAR AND THE
         PUBLIC DISCLOSURE BAR. .......................................................................... 6

         A.    The First-to-File Bar. ............................................................................. 7

         B.    The Public Disclosure Bar. .................................................................. 11

                1.    Heath's claims were publicly disclosed in the Wisconsin
                     Action and in a prior government investigation. ......................... 12

                      a.    Heath's claims in this case were publicly disclosed
                           through the Wisconsin Action. ...................................... 13

                      b.    Heath's claims and allegations in this case were
                           publicly disclosed through a prior government
                         investigation. .................................................................. 14

                2.    Heath fails to establish that he is an "original source." ............... 15

    II.    HEATH FAILS TO STATE A CLAIM UNDER THE FCA. ............................. 16

         A.    Heath Fails to Allege Any Specific Allegedly False Claims by
             Defendants. .......................................................................................... 17

         B.    Heath Cannot Cure his Insufficient Pleadings by Citing FCC
             Forms or through his "Implied" Misrepresentation Argument. ............ 20

                 1.    Heath fails to cure his deficient pleadings by citing to FCC
                       Forms. ........................................................................................ 20

                 2.    Heath fails to provide sufficient details to support his
                       allegations of "implied" false certifications. ............................... 22

    III.   THE COURT SHOULD DISMISS HEATH'S STATE AND LOCAL
         CLAIMS. .............................................................................................................. 23

          A.    This Court Should Decline to Exercise Pendent Jurisdiction. ................. 23

         B.    Heath's State Claims are Barred by Each Act's First-to-File Bar. .......... 24

         C.    Heath's State Claims are Barred by Each Act's Public Disclosure
             Bar. ...................................................................................................... 25

**TABLE OF CONTENTS**
(continued)

**Page**

D.    Heath's State Claims Should be Dismissed Under Rules 9(b) and 12(b)(6). ............................................................................................... 26

CONCLUSION ................................................................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baker v. Henderson*,
150 F.Supp.2d 13 (D.D.C. 2001) ....................................................................................14

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) ........................................................................................................24

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
559 U.S. 280 (2010) ................................................................................................6, 11, 16

*Lyles v. District of Columbia*,
777 F. Supp. 2d 128 (D.D.C. 2011) .................................................................................3

*Oetiker v. Jurid Werke, G.m.b.H.*,
556 F.2d 1 (D.C. Cir. 1977) ...........................................................................................27

*Poblete v. Rittenhouse Mortg. Brokers*,
675 F. Supp. 2d 130 (D.D.C. 2009) ...............................................................................17

*Ramirez v. U.S. Customs and Border Protection*,
709 F. Supp. 2d 74 (D.D.C. 2010) ...................................................................................6

*Shekoyan v. Sibley Int'l*,
409 F.3d 414 (D.C. Cir. 2005) ........................................................................................24

*Shuler v. United States*,
531 F.3d 930 (D.C. Cir. 2008) ..........................................................................................6

\* *U.S. ex rel. Batiste v. SLM Corp.*,
659 F.3d 1204 (D.C. Cir. 2011) ....................................................................................6, 8

*U.S. ex rel. Bender v. N. Am. Telecomms., Inc.*,
750 F. Supp. 2d 1 (D.D.C. 2010) ...................................................................................19

*U.S. ex rel. Brown v. Aramark Corp.*,
591 F. Supp. 2d 68 (D.D.C. 2008) .................................................................................17

*U.S. ex rel. Davis v. District of Columbia*,
679 F.3d 832 (D.C. Cir. 2012) ........................................................................................12

*U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs.*,
778 F. Supp. 2d 37 (D.D.C. 2011) ..................................................................................24

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

\* *U.S. ex rel. Folliard v. CDW Tech. Servs.*
("*Folliard I*"), 722 F. Supp. 2d 20 (D.D.C. 2010) ...................................................19

\* *U.S. ex rel. Folliard v. CDW Tech. Servs.*
("*Folliard II*"), 722 F. Supp. 2d 37 (D.D.C. 2010).......................................9, 10, 11

*U.S. ex rel. Foust v. Grp. Hospitalization & Med. Servs. Inc.*,
26 F. Supp. 2d 60 (D.D.C. 1998) ..................................................................13

\* *U.S. ex rel. Green v. Serv. Contract Educ. & Training Trust Fund*,
843 F. Supp. 2d 20 (D.D.C. 2012)........................................................6, 13, 16

*U.S. ex rel. Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009) ....................................................................18, 19

\* *U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp.*,
318 F.3d 214 (D.C. Cir. 2003) .................................................................8, 9, 10

\* *U.S. ex rel. Heath v. Wis. Bell, Inc.*,
No. 08–CV–00724, 2012 WL 4128020 (E.D. Wis. Sept. 18, 2012) .............................. *passim*

*U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
498 F. Supp. 2d 25 (D.D.C. 2007) .................................................................13

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*,
441 F.3d 552 (8th Cir. 2006) ........................................................................17

*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*,
149 F.3d 227 (3d Cir. 1998)...........................................................................11

*U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*,
614 F.3d 1163 (10th Cir. 2010) .....................................................................18

*U.S. ex rel. Osheroff v. Humana, Inc.*,
No. 10-24486-cv-SCOLA, 2012 WL 4479072 (S.D. Fla. Sept. 28, 2012) .............................12

*U.S. ex rel. Poteet v. Medtronic, Inc.*,
552 F.3d 503 (6th Cir. 2009) ...........................................................................9

*U.S. ex rel. Powell v. Am. Intercontinental Univ.*,
No. 1:08-CV-2277-RWS, 2012 WL 2885356 (N.D. Ga. July 12, 2012) ...............................8

*U.S. ex rel. Settlemire v. District of Columbia*,
198 F.3d 913 (D.C. Cir. 1999) .......................................................................13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*U.S. ex rel. Shea v. Verizon Bus. Network Servs. Inc.*,
 904 F. Supp. 2d 28 (D.D.C. 2012) ..................................................................................7

*U.S. ex rel. Snapp, Inc. v. Ford Motor Co.*,
 532 F.3d 496 (6th Cir. 2008) ........................................................................................17

\* *U.S. ex rel. Springfield Terminal Ry. v. Quinn*,
 14 F.3d 645 (D.C. Cir. 1994) .........................................................................11, 13, 15

\* *U.S. ex rel. Totten v. Bombardier Corp.*
 ("*Totten I*"), 286 F.3d 542 (D.C. Cir. 2002) ...........................................................16, 17

\* *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*,
 389 F.3d 1251 (D.C. Cir. 2004)...............................................................17, 19, 23

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ......................................................................................26

**FEDERAL ADMINISTRATIVE DECISIONS**

*In re Federal-State Joint Board on Universal Service*,
 Report and Order, 12 FCC Rcd. 8776 (rel. May 8, 1997) .........................................18

**FEDERAL STATUTES**

\* 31 U.S.C. § 3729(a) .......................................................................................................5

\* 31 U.S.C. § 3730(b) ...............................................................................................2, 7, 8

\* 31 U.S.C. § 3730(e) ............................................................................................ *passim*

31 U.S.C. § 3731(b) ........................................................................................................4

47 U.S.C. § 254(d) ..........................................................................................................3

47 U.S.C. § 254(h) ..........................................................................................................2

**STATE AND LOCAL STATUTES**

Cal. Gov. Code § 12650(c)(10)......................................................................................24

Cal. Gov. Code § 12651(a) ............................................................................................26

Cal. Gov. Code § 12652(d)(3)(B)..................................................................................26

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Chi. Mun. Code § 1-22-020 ................................................................................................26

Chi. Mun. Code § 1-22-030(b)(5) ......................................................................................24

Chi. Mun. Code § 1-22-030(f) ...........................................................................................25

D.C. Code § 2-381.02(a) ....................................................................................................26

D.C. Code § 2-381.03(b)(6) ...............................................................................................24

D.C. Code § 2-381.03(c)(2)(B) ..........................................................................................26

Del. Code Ann. tit. 6, § 1201(a) .........................................................................................26

Del. Code Ann. tit. 6, § 1203(b)(5) ....................................................................................24

Del. Code Ann. tit. 6, § 1206(c) .........................................................................................25

Fla. Stat. § 68.082(2) ..........................................................................................................26

Fla. Stat. § 68.083(7) ..........................................................................................................24

Fla. Stat. § 68.087(3) ..........................................................................................................25

Haw. Rev. Stat. §§ 661-21(a) .............................................................................................26

Haw. Rev. Stat. § 661-25(e) ...............................................................................................24

Haw. Rev. Stat. § 661-31 ....................................................................................................25

Ill. Comp. Stat. Ann. 175/4(b)(5) .......................................................................................24

Ill. Comp. Stat. 175/4(e)(4) ...............................................................................................25

Ill. Comp. Stat. 175/3(a)(1) ...............................................................................................26

Ind. Code § 5-11-5.5-1 .......................................................................................................26

Ind. Code § 5-11-5.5-4(g) .............................................................................................24, 25

Ind. Code § 5-11-5.5-7(f) ...................................................................................................25

Mass. Gen. Laws ch. 12, § 5A(a) .......................................................................................25

Mass. Gen. Laws ch. 12, § 5B(a) .......................................................................................26

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Mass. Gen. Laws ch. 12, § 5C(6) ........................................................................................24

Mass. Gen. Laws ch. 12 § 5G(3) .........................................................................................25

Minn. Stat. § 15C.01 ...........................................................................................................26

Minn. Stat. § 15C.02(a) .......................................................................................................26

Minn. Stat. § 15C.05(b) .......................................................................................................24

Minn. Stat. § 15C.05(c)(3) ...................................................................................................26

Mont. Code Ann. § 17-8-403(1) ..........................................................................................26

Mont. Code Ann. § 17-8-406(7) ..........................................................................................24

Mont. Code § 17-8-403(5)(c) ..............................................................................................26

N.C. Gen. Stat. § 1-607(a) ...................................................................................................26

N.C. Gen. Stat. § 1-608(b)(5) ..............................................................................................24

N.C. Gen. Stat. § 1-611(d) ..................................................................................................25

N.J. Stat. Ann. § 2A:32C-3 .................................................................................................26

N.J. Stat. Ann. § 2A:32C-5(i) ..............................................................................................24

N.J. Stat. § 2A:32C-9(c) ......................................................................................................25

N.M. Stat. Ann. § 44-9-5(E) ................................................................................................24

N.M. Stat. § 44-9-3(A) ........................................................................................................26

N.M. Stat. § 44-9-9(D) ........................................................................................................25

N.Y.C. Code § 7-803(a) .......................................................................................................26

N.Y.C. Code § 7-804(d)(3) ..................................................................................................26

N.Y.C. Code § 7-804(f)(1) ...................................................................................................25

N.Y. State Fin. Law § 188(7) ...............................................................................................25

N.Y. State Fin. Law § 189(1) ...............................................................................................26

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

N.Y. State Fin. Law § 190(4)................................................................................................24

N.Y. State Fin. Law § 190(9)(b)...........................................................................................25

Nev. Rev. Stat. Ann. § 357.080(2)...................................................................................24, 25

Nev. Rev. Stat. § 357.040(1)................................................................................................26

Nev. Stat. § 357.100(2) .......................................................................................................26

R.I. Gen. Laws § 9-1.1-3(a) .................................................................................................26

R.I. Gen. Laws § 9-1.1-4(b)(5) ............................................................................................24

R.I. Gen. Laws §§ 9-1.1-4(e)(4) ..........................................................................................25

Tenn. Code Ann. § 4-18-103(a)...........................................................................................26

Tenn. Code Ann. § 4-18-104(c)(10) .....................................................................................24

Tenn. Code § 4-18-104(d)(3)(B)..........................................................................................26

Va. Code Ann. § 8.01-216.3(A)............................................................................................26

Va. Code Ann. § 8.01-216.5(E) ............................................................................................24

Va. Code Ann. § 8.01-216.8 ................................................................................................25

**FEDERAL REGULATIONS**

47 C.F.R. § 54.5 .....................................................................................................................3

* 47 C.F.R. § 54.500(f) ......................................................................................................4, 18

47 C.F.R. §§ 54.501 ..............................................................................................................22

47 C.F.R. § 54.501(f) .............................................................................................................21

47 C.F.R. §§ 54.502 ..............................................................................................................22

47 C.F.R. § 54.503(a)..............................................................................................................3

47 C.F.R. § 54.503(c)...........................................................................................................3, 21

47 C.F.R. § 54.504(a)..............................................................................................................3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

* 47 C.F.R. § 54.511(b) ...................................................................................3, 21, 22

**OTHER AUTHORITIES**

78 Fed. Reg. 34096 (June 6, 2013) ...................................................................20

* Fed. R. of Civ. P. 9(b) ........................................................................... *passim*

* Fed. R. of Civ. P. 12(b)(1) ...............................................................................1, 6

* Fed. R. of Civ. P. 12(b)(6) ......................................................................... *passim*

*  In accordance with Local Civil Rule 7(a), authorities upon which Defendants chiefly rely are marked with an asterisk.

Defendants respectfully submit this Memorandum of Law in support of their motion to dismiss the Complaint [Dkt. # 1] filed by Todd Heath ("Relator" or "Heath") pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).

## PRELIMINARY STATEMENT

This is a *qui tam* action under the False Claims Act ("FCA"), in which Relator Todd Heath attempts to recycle a previous failed *qui tam* action that he filed against Wisconsin Bell, Inc. ("Wisconsin Bell") in the Eastern District of Wisconsin in 2008. *See U.S. ex rel. Heath v. Wis. Bell, Inc.*, No. 08–CV–00724, 2012 WL 4128020 (E.D. Wis. Sept. 18, 2012) ("Wisconsin Action"). The Wisconsin Action contained the same E-Rate and "Lowest Corresponding Price" ("LCP") claims that Heath makes in this action, the only difference being that the Wisconsin Action was brought against a single AT&T subsidiary – Wisconsin Bell – and this action is brought against Wisconsin Bell, its ultimate parent company AT&T Inc., and 18 other AT&T Inc. subsidiaries nationwide (together "Defendants" or "AT&T").

The Wisconsin Action was dismissed in September 2012 because it was based entirely on publicly disclosed information. *Wis. Bell*, 2012 WL 4128020, at *3. Heath's present Complaint suffers from the same deficiency. Its central allegations are the same as those in the Wisconsin Action, *i.e.* an alleged failure to comply with the LCP regulations (albeit Heath now asserts the claim against all of the AT&T subsidiaries). The only arguably new allegation – that Defendants implemented an enhanced E-Rate training, monitoring and billing program in 2009 to ensure LCP compliance (Compl. ¶¶ 76-77) – is based on a publicly disclosed Compliance Agreement signed by AT&T and the FCC in 2009. In addition, Heath *acknowledges* that before he filed this complaint the government had already investigated the subject LCP practices in at least two jurisdictions where an AT&T subsidiary operates. *Id.* ¶¶ 73-74. Thus, Heath's Complaint fails to meet the FCA's requirement that a *qui tam* relator provide new information that uncovers

fraud against the government. Moreover, even if Heath could overcome this fundamental barrier, he has failed to plead his fraud claims with the necessary particularity.

As such, Heath's Complaint fails to satisfy threshold jurisdictional and pleading requirements and must be dismissed for three independent reasons:

- **First-to-File Bar.** Heath already raised the same claims and allegations in the earlier-filed, failed Wisconsin Action. Heath's claims thus are barred by the FCA's first-to-file bar, 31 U.S.C. § 3730(b)(5).

- **Public Disclosure Bar.** Heath's present claims were previously disclosed in the Wisconsin Action (which was itself dismissed because it was based on information gleaned from public documents) and a Compliance Agreement resulting from one of the prior government investigations concerning the subject LCP practices. Thus, Heath's claims are barred by the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A).

- **Failure to State a Claim.** Heath fails to allege sufficiently any facts supporting the claims. Heath vaguely alleges that all of the Defendants engaged in fraud by charging prices above LCP, but he does not identify with the necessary particularity *any* specific instance in which *any* Defendant allegedly charged a price above the LCP or made a false representation concerning LCP to the government. Because Heath fails to plead with particularity any allegedly false claim, his Complaint fails under Rules 9(b) and 12(b)(6).

Heath fares no better in his attempt to restate his FCA claims under state and local statutes. In the first place, there is no basis for the Court to exercise supplemental jurisdiction over these non-federal claims because Heath's suit has no federal foothold. Moreover, Heath's state-law claims merely parrot his federal claims and are subject to dismissal for the same reasons. Thus, Heath's Complaint should be dismissed in its entirety, with prejudice.

**BACKGROUND**

## I.    THE E-RATE PROGRAM

Pursuant to the Telecommunications Act of 1996, the FCC administers the Universal Service Schools and Libraries Program (the "E-Rate program"), under which telecommunications carriers provide services to eligible schools and libraries at discounted rates. 47 U.S.C. § 254(h)(1)(B). The discounts are subsidized through the Universal Service Fund

2

("USF").  47 U.S.C. § 254(d).  To receive discounted services, eligible schools and libraries must first conduct a competitive bidding process.  47 C.F.R. § 54.503(a).  To start the bidding process, a school must submit an FCC form, "Form 470," to the Universal Service Administrative Company ("USAC"), an independent corporation designated by the FCC to oversee the E-Rate program.  47 C.F.R. §§ 54.5, 54.503(c).

After conducting the bidding process, the school selects its service provider.  47 C.F.R. §§ 54.503(c)(4); 54.504(a).  The school then submits to USAC a completed FCC Form 471, which identifies the particular services the school seeks and the rates for those services.  FCC Form 471 (*See* Exhibit 1 hereto).[1]  USAC then decides whether to authorize the discount.  47 C.F.R. § 54.504(a).  Once a school pays for the authorized services, there are two reimbursement options.  If the school paid full price for the services, it submits an FCC Form 472 to USAC for reimbursement.  (*See* Exhibit 2 hereto.)  Alternatively, if the school only paid the discounted amount, then the service provider submits FCC Form 474 to USAC.  (*See* Exhibit 3 hereto.)  In both cases, USAC sends the reimbursement to the service provider, and the service provider reimburses the school if the school paid full price.  Compl. ¶ 47(f).  Finally, each service provider annually files an FCC Form 473 with USAC to certify that it is in compliance with nine specific E-Rate program requirements – none of which involve the LCP regulation.  (See Exhibit 4 hereto.)

If a school selects a service provider and USAC approves funding under the E-Rate program, then the E-Rate regulations prohibit the service provider from charging the school "a price above the lowest corresponding price for supported services."  47 C.F.R. § 54.511(b).  The

---

[1]     On a motion to dismiss, the Court may consider documents incorporated by reference in the complaint.  *Lyles v. District of Columbia*, 777 F. Supp. 2d 128, 132 (D.D.C. 2011).  Thus, the Court may consider the FCC forms, which are incorporated by reference in Heath's Complaint.  Compl. ¶¶ 81-94.

FCC's regulations define LCP as "the lowest price that a service provider charges to non-residential customers who are similarly situated to a particular school, library, or library consortium for similar services."  47 C.F.R. § 54.500(f).[2]

## II.    THE ALLEGATIONS OF THE COMPLAINT

Heath's Complaint sets forth much of the regulatory structure of the E-Rate program, but little else.  Compl. ¶¶ 42-60.  In particular, although Heath claims that Defendants violated the LCP regulation, he never identifies a specific instance in which any Defendant ever charged an E-Rate customer in excess of the LCP.  Instead, Heath speculates that, prior to 2009, Defendants overcharged some unspecified customers in some unspecified instances based solely on the allegation that Defendants implemented a "new pricing and billing regime" in 2009 to comply with the LCP obligation.  *Id.* ¶¶ 76-77.  Based thereon, Heath alleges that Defendants "never once calculated and offered LCP to a school or library" before 2009.  *Id.* ¶ 62.  And, based on that unsubstantiated allegation, Heath leaps to the conclusion that "each and every" annual Form 473 submitted by Defendants from 1997 to 2009 contained false certifications.  *Id.* ¶¶ 81-90.[3]  Heath further claims that Defendants "caused" unspecified E-Rate customers to submit false certifications on their Form 471s and 472s.  *Id.* ¶¶ 91-94.[4]  Finally, Heath alleges that Defendants made implied false certifications by seeking reimbursement under the E-Rate program.  *Id.* ¶¶ 95-101.

---

[2]      As discussed in Section II.A below, the analysis of "similarly situated customers" and "similar services" requires much more than a naked examination of whether two customers pay the same price.

[3]      While Heath purports to allege false claims going back as far as fifteen years (Compl. ¶ 102), the FCA's statute of limitations bars any claims based on conduct occurring more than six years before Heath filed his Complaint.  31 U.S.C. § 3731(b).  Because this action is barred in its entirety by other provisions of the FCA, the Court need not consider the impact of the limitations bar at this time.

[4]      As discussed in Part II.B. below, none of these three Forms can serve as a basis for a false certification claim in any event, because none of the Forms address LCP.

Based upon the foregoing allegations, Count I of the Complaint purports to set forth a claim for violation of the FCA, specifically 31 U.S.C. § 3729(a)(1)(A), (B) and (G). *Id.* ¶¶ 106-112. In Counts II through XXI, Heath claims that Defendants violated the analogous statutes of multiple states and cities. *Id.* ¶¶ 113-311.

The Complaint does not distinguish between Defendants. Heath alleges AT&T Inc. is the parent company of the other Defendants, which are known as "service providers" under the E-Rate program. *Id.* ¶ 8. In fact, AT&T Inc. is a passive holding company and not a service provider, but Heath alleges AT&T Inc. "controls the methods and terms" by which its subsidiaries participate in the program, including the manner in which they bill E-Rate customers. *Id.* ¶ 28.[5]

On March 13, 2012, the United States gave notice that it was declining to intervene in this matter. [Dkt. # 6]. Subsequently, the states of New York [Dkt. # 7], New Jersey [Dkt. # 8], California [Dkt. # 9], North Carolina [Dkt. # 10], Illinois [Dkt. # 12], and Tennessee [Dkt. # 13], and the District of Columbia [Dkt. # 14] gave notice that they were declining to intervene. None of the remaining governments has provided notice that it intends to intervene.

## III.    RELATOR

Tellingly, the Complaint is virtually silent about how Heath supposedly came to learn about this alleged scheme involving AT&T Inc. and its subsidiaries. Heath alleges that he owns a business called "The Telephone Company", and through that business performed audits of telecommunications bills for unspecified schools and other businesses located in unspecified jurisdictions. Compl. ¶ 5. The sum and substance of Heath's allegations concerning how he obtained evidence supporting his claims is that "[a]s a result of these audits, and the subsequent

---

[5]    By this motion to dismiss, Defendants do not admit or adopt any of the allegations of the Complaint, including the allegation that AT&T Inc. "controls" its subsidiaries.

investigation by his attorneys, Heath became aware of fraudulent acts and practices described in this Complaint." *Id.* ¶ 5. As shown below, that allegation is insufficient to support a *qui tam* action, much less the particularity required to state an FCA claim under Rules 9(b) and 12(b)(6).

## ARGUMENT

### I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF JURISDICTION UNDER THE FIRST-TO-FILE BAR AND THE PUBLIC DISCLOSURE BAR.

Heath bears the burden of establishing by a preponderance of the evidence that the Court has jurisdiction to hear his case. *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). "On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff's factual allegations are subject to closer scrutiny than they would be on a motion to dismiss for failure to state a claim." *U.S. ex rel. Green v. Serv. Contract Educ. & Training Trust Fund*, 843 F. Supp. 2d 20, 31 (D.D.C. 2012). Moreover, "[t]he Court may consider matters outside the pleadings" and may "rest its decision on the Court's own resolution of disputed facts." *Ramirez v. U.S. Customs and Border Protection*, 709 F. Supp. 2d 74, 78 (D.D.C. 2010).

The FCA contains two jurisdictional limitations that independently bar this Action. The first, known as the first-to-file bar, prevents successive *qui tam* actions for the same alleged fraud. *See U.S. ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1208 (D.C. Cir. 2011). The second, known as the public disclosure bar, "deprives courts of jurisdiction over *qui tam* suits when the relevant information has already entered the public domain through certain channels." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 285 (2010).

Here, as discussed below, Heath's prior Wisconsin Action not only triggers the first-to-file bar, it also triggers the public disclosure bar because it alleges the same essential claims of E-Rate and LCP misconduct. The new Complaint differs from the Wisconsin Action only in that 1) Heath has added the parent holding company and other AT&T subsidiaries (in addition to

Wisconsin Bell) as Defendants, 2) he alleges AT&T Inc. "controls" its subsidiaries' participation in the E-Rate Program, and 3) he asserts that Defendants modified their training and billing practices in 2009 to comply with the LCP obligations.  These changes do nothing more than change Heath's alleged Wisconsin-centric scheme to a multi-state scheme, and acknowledge that any such scheme involving LCP ended two years before this Complaint was filed.

The public disclosure bar also applies because, as noted above, the only new substantive fact not alleged in the Wisconsin Action – that Defendants implemented an enhanced E-Rate training, monitoring and billing program in 2009 to ensure LCP compliance – was also publicly available. That allegation is based on a Compliance Agreement entered into with the Federal Communications Commission in 2009 as a result of an investigation of an AT&T subsidiary's E-Rate practices in Indiana.  (*See* Exhibit 6 hereto.)  Heath acknowledges the fact of the investigation in his Complaint as well as the $8.2 million that was paid to resolve the government's allegations.  (Compl. ¶ 73.)  Heath subsequently filed comments with the FCC revealing he was aware of the Compliance Agreement, which he admits he obtained from the Internet.  (*See* Exhibit 6).  Thus, both the first-to-file and public disclosure bars apply, and the Complaint should be dismissed.

### A.    The First-to-File Bar.

When a relator files a *qui tam* action under the FCA, "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  The jurisdictional limitation imposed by the first-to-file bar applies equally when the relator himself was the "first to file" the original action, and it thus bars "successive related actions brought by the same relator."  *U.S. ex rel. Shea v. Verizon Bus. Network Servs. Inc.*, 904 F. Supp. 2d 28, 33-34 (D.D.C. 2012).  "This furthers the statute's 'twin

goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own.'"  *Batiste*, 659 F.3d at 1208 (quoting *U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003)).   For the same reason, Section 3730(b)(5) bars not only identical claims, but also "related" claims.   31 U.S.C. § 3730(b)(5).   If the later-filed complaint alleges a fraudulent scheme that the government already is equipped to investigate based on the first-filed complaint, then the claims are "related," and the jurisdictional bar applies.  *Batiste*, 659 F.3d at 1209.

Here, Heath filed the Wisconsin Action on October 16, 2008, over three years before his present Complaint.  Thus, the Wisconsin Action was "pending" when Heath filed his present complaint.[6]   Under the first-to-file bar, "[t]he command is simple: as long as a first-filed complaint remains pending, no related complaint may be filed."  *Batiste*, 659 F.3d at 1210.

The Wisconsin Action is "related" to the present case because the Wisconsin Action sufficed to put the government on notice of the purported fraud that Heath alleges in this case. Specifically, the claim in the Wisconsin Action (*see* Exhibit 5, hereto) was that Wisconsin Bell -- a subsidiary of AT&T Inc. and a Defendant in this case – violated the E-Rate program's LCP requirement because "[a]ll, or nearly all, bills submitted" by Wisconsin Bell to USF "for the past ten years have failed to comply with the E-Rate program's lowest corresponding price mandate." Wisconsin Compl. ¶ 43.  Heath claimed in the Wisconsin Action to have learned that Wisconsin Bell was not complying with its LCP obligation when he obtained through a "public records request" a copy of Wisconsin Bell's Voice Network Services Agreement with the Wisconsin

---

[6]   Indeed, it is still "pending" today, because Heath has appealed to the Seventh Circuit.  Moreover, "prior, previously dismissed actions are 'pending' for purposes of the first-to-file rule."  *U.S. ex rel. Powell v. Am. Intercontinental Univ.*, No. 1:08-CV-2277-RWS, 2012 WL 2885356, at *6 (N.D. Ga. July 12, 2012).  Thus, even if Heath had filed this action *after* the Wisconsin Action was dismissed, his Complaint still would be barred.

Department of Administration (the "VNS Agreement"), and compared the prices available for services under that agreement with rates being charged to school districts who were not buying under the VNS Agreement. Wisconsin Compl. ¶¶ 31-38.

In the present case, Heath makes the same allegations of LCP non-compliance with respect to AT&T Inc. and its subsidiaries (including, again, Wisconsin Bell), the only difference being that he does not tie the alleged violations to any specific service or state VNS Agreement or other contract, but instead simply alleges a general scheme and failure to comply in all of the named states and cities. This distinction makes no difference for the first-to-file bar.

First, Heath cannot avoid the preclusive effect of the first-to-file bar simply by alleging that the same purportedly fraudulent scheme occurred in different locations. *Hampton*, 318 F.3d at 218-19; *U.S. ex rel. Folliard v. CDW Tech. Servs.* ("*Folliard II*"), 722 F. Supp. 2d 37, 41 n.4 (D.D.C. 2010). Nor can Heath circumvent the first-to-file bar by naming additional defendants, where the later-filed complaint alleges the same purportedly fraudulent scheme. *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 517 (6th Cir. 2009) (citing *Hampton*, 318 F.3d at 218). And, obviously, Heath's attempt to tweak his legal theory and make it even *more* vague (by no longer tying the alleged LCP violations to any particular "lowest corresponding price" as he tried to do with the VNS Agreement in the Wisconsin Action) does not save his new case. *Folliard II*, 722 F. Supp. 2d at 41 (variations in theory of the case are not material).

In *Folliard II*, the Court addressed two complaints in which the relators alleged that the defendant sold products to the government that did not comply with the Trade Agreements Act ("TAA"). The Court noted that a "later-filed complaint will not pass muster by merely providing additional details about 'the nature and extent of [the] fraud.'" *Id.* (quoting *Hampton*, 318 F.3d at 219). The relators argued that their later-filed claims were not barred because they involved

different products offered for sale under different contracts to different agencies. But the Court rejected those arguments because the relators were merely reiterating the "core allegation" from the first complaint. *Id.* at 43. The Court asked whether the later-filed action alleged a "materially similar situation that investigations launched in direct consequence of [the first-filed] complaint would have revealed." *Id.* The Court applied the first-to-file bar because the initial complaint equipped the government with allegations sufficient to investigate whether the defendant engaged in similar conduct when it sold different products under other contracts. *Id.*

The result is no different here. The first-filed Wisconsin Action plainly equipped the government with sufficient allegations to investigate Heath's current claims, as it contains the same "core allegation" of a failure to comply with LCP. Wisconsin Bell is an AT&T, Inc. subsidiary participating in the E-Rate program—just like the other Defendants in this case. The E-Rate program rules are uniform, not state-specific, and any investigation by the government naturally would have encompassed AT&T and its subsidiaries as a whole. Indeed, Heath affirmatively alleges that AT&T "completely controls the methods and terms" of its subsidiaries' participation in the E-Rate program. Compl. ¶ 28.

Further, there is no doubt that the government had sufficient information to investigate Defendants' LCP practices before Heath filed the present complaint, as the government had already commenced LCP investigations in Wisconsin and Indiana before this lawsuit was filed. Heath, in fact, alleges that the FCC began investigating AT&T's E-Rate practices in Wisconsin as "a result of the Wisconsin Action." Compl. ¶ 74. In other words, not only did the Wisconsin Action *equip* the government to investigate Heath's present claims, Heath alleges the Wisconsin Action in fact spurred such an investigation. Heath further acknowledges that, prior to this lawsuit being filed, the government investigated the subject E-Rate practices in Indiana, which

10

resulted in a payment to the government of over $8.2 million. Compl. ¶ 73. Heath has alleged nothing in this Complaint that one could credibly argue reveals something about Defendants' LCP billing practices that the government would not or could not have already learned from its prior investigations.

As noted in *Folliard II*, "courts must strive to minimize 'duplicative claims' that 'do not help reduce fraud or return funds to the federal fisc, since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.'" *Folliard II*, 722 F. Supp. 2d at 42-43 (quoting *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998)). Nothing in this case adds to the essential facts alleged in the Wisconsin Action. The Wisconsin Action already gave the government all the information it needed to investigate and discover the allegedly similar conduct on the part of AT&T's other subsidiaries. The Complaint discloses nothing materially new and as such is barred by the first-to-file rule.

**B.     The Public Disclosure Bar.**

Heath's Complaint also is barred by the public disclosure bar. The *qui tam* provisions of the FCA were designed to reward private citizens who provide new information that uncovers fraud against the government, while simultaneously barring those who would merely file "parasitic" lawsuits based upon information that is already publicly known. *U.S. ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994). To strike this balance, the FCA "deprives courts of jurisdiction over *qui tam* suits when the relevant information has already entered the public domain through certain channels." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 285 (2010). The applicable public

11

disclosure bar was codified at 31 U.S.C. § 3730(e)(4)(A).[7]  At the time pertinent to this lawsuit, that statute provided:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

A relator may overcome the public disclosure bar only if he can demonstrate he is the "original source" of the allegations, meaning that he (1) voluntarily disclosed to the government, before the public disclosure, the information on which the allegations are based, or (2) has independent knowledge that materially adds to the publicly disclosed allegations and voluntarily provided that information to the government before filing suit.  31 U.S.C. § 3730(e)(4)(B).

The public disclosure bar requires a three-step inquiry: First, were the relator's allegations "publicly disclosed"?  If so, are the relator's allegations "substantially the same" as the publicly disclosed information?  If so, is the relator an "original source" of the information underlying the relator's action?  *U.S. ex rel. Davis v. District of Columbia*, 679 F.3d 832, 835-39 (D.C. Cir. 2012).  In this case, the answers to those questions compel dismissal.

### 1. Heath's claims were publicly disclosed in the Wisconsin Action and in a prior government investigation.

Heath's claims in this case were previously publicly disclosed in the Wisconsin Action, which itself was dismissed because it was based on information from public documents.  Again, the only arguably "new" fact alleged in Heath's Complaint – that Defendants implemented an

---

[7]    On March 23, 2010, the Patient Protection and Affordable Care Act ("PPACA") amended the FCA's public disclosure bar.  Pub. L. No. 111-148, § 10104, 124 Stat. 119, 901-02 (2010).  Here, the pre-PPACA version of the public disclosure bar applies to alleged conduct before March 31, 2010 (and thus covers most, if not all, of the alleged conduct at issue).  *U.S. ex rel. Osheroff v. Humana, Inc.*, No. 10-24486-cv-SCOLA, 2012 WL 4479072, at *4 n.8 (S.D. Fla. Sept. 28, 2012) ("[T]he previous version of the statute will apply to any alleged false claims made before March 23, 2010, and the amended version to any false claims made thereafter"); *see also Graham County*, 559 U.S. at 283 n.1.

enhanced LCP compliance program in 2009 – was publicly disclosed in the FCC Compliance Agreement resulting from the government's investigation of E-Rate practices in Indiana.

> a.      *Heath's claims in this case were publicly disclosed through the Wisconsin Action.*

The Wisconsin Action constituted a public disclosure of Heath's allegations because it was a "civil hearing," one of the sources that qualify as a public disclosure under the FCA. 31 U.S.C. § 3730(e)(4)(A)(i). As demonstrated *supra* in Section I.A, Heath's claims in this case are the same in all material respects as those in the Wisconsin Action. Federal courts have uniformly recognized that "the term 'hearing' was intended to apply in a broad context of legal proceedings under § 3730(e)(4)(A)," and that it is "roughly synonymous with 'proceeding.'" *Springfield Terminal*, 14 F.3d at 652. Thus, "a civil complaint" like the Wisconsin Action "can plainly constitute a public disclosure in a civil hearing under the False Claims Act." *U.S. ex rel. Foust v. Grp. Hospitalization & Med. Servs. Inc.*, 26 F. Supp. 2d 60, 67 (D.D.C. 1998).

Here, the allegations in the Wisconsin Action equipped the government with enough information to investigate Defendants' E-Rate and LCP practices and, as Heath acknowledges, actually resulted in such an investigation. Compl. ¶ 74.

> The key question is 'whether the publicly disclosed information could have formed the basis for a governmental decision on prosecution, or could at least have alerted law-enforcement authorities to the likelihood of wrongdoing.' If the public disclosure could have alerted the government to the fraud, there is little value in permitting a private individual to sue, and the FCA accordingly deprives courts of jurisdiction to hear a *qui tam* action.

*Green*, 843 F. Supp. 2d at 29-30 (quoting *U.S. ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 918 (D.C. Cir. 1999)); *see also U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 50 (D.D.C. 2007) (slight variations in legal theory cannot salvage a complaint based on public disclosures).

13

> b.    *Heath's claims and allegations in this case were publicly disclosed through a prior government investigation.*

As indicated, the only material "new" fact alleged in Heath's Complaint is that Defendants implemented a "revamped" training, monitoring and billing program in 2009 to ensure LCP compliance.  Compl. ¶¶ 62 and 76-77.  This allegation goes to the heart of Heath's Complaint in that it is the only support Heath offers for his theory that, prior to 2009, Defendants "never once calculated and offered LCP to a school or library."  *Id.* ¶ 62.  But the allegation concerning the "revamped" E-Rate Program is not information that Heath personally discovered or is now publicly revealing for the first time.  To the contrary; AT&T's actions in 2009 concerning E-Rate compliance were publicly disclosed in a 2009 FCC Compliance Agreement signed by AT&T Inc. and arising out of the government's Indiana investigation.  While Heath does not attach the Compliance Agreement to his Complaint, he acknowledges his awareness of the Indiana investigation in his Complaint.  *Id.* ¶ 73.  Moreover, Heath filed Comments with the FCC in July, 2013 to which he attached: (1) a February 13, 2009 Press Release from the Department of Justice discussing the Indiana investigation (which is available on the DOJ's website at http://www.justice.gov/opa/pr/2009/February/09-civ-126.html), and (2) a copy of the Compliance Agreement (which Heath admits in his FCC Comments he obtained from the Internet).  (*See* Exhibit 6 hereto).[8]  Not only do Heath's allegations appear to be drawn directly from the Press Release and Compliance Agreement but, taken together, the two documents show that the changes to Defendants' E-Rate and LCP programs – which form the foundation for Heath's claims – were publicly disclosed more than two and half years before the filing of Heath's Complaint.  (*See, e.g.*, Exhibit 6, Compliance Agreement, at Section B ("E-Rate

---

[8]    This Court "may take judicial notice of matters of a general public nature," such as Heath's public comments filed with the FCC, "without converting the motion to dismiss into one for summary judgment."  *Baker v. Henderson*, 150 F.Supp.2d 13, 15 (D.D.C. 2001).

Compliance Training") (describing changes to E-Rate training procedures)).  The Complaint is nothing more than an attempt to free-ride on the government's prior efforts, which is the very conduct the public disclosure bar is designed to prevent.  *Springfield Terminal*, 14 F.3d at 651.

### 2.    Heath fails to establish that he is an "original source."

Heath's allegations also fail to show that he qualifies under the original source exception to the public disclosure bar.  Heath fails to establish that he has any independent knowledge that materially adds to the publicly disclosed information.  Instead, Heath relies on the same knowledge he asserted in the Wisconsin Action—audits that he performed for unspecified school districts (*Compare* Compl. ¶ 5 *with* Wisconsin Compl. ¶ 3 (Exhibit 5)) as well as the information publicly disclosed in the 2009 Compliance Agreement.  And the other information relied on by Heath in the Wisconsin Action – the VNS agreements – was deemed public information by the Wisconsin Court in dismissing the action.  *Wis. Bell*, 2012 WL 4128020, at *3.  Heath's vague and unexplained reference to "subsequent investigation by his attorneys" also adds nothing to the publicly disclosed information that forms the basis for his claims.  *Id.* ¶ 5.

Thus, Heath does not allege any independent, non-public information that led him to make his accusations about activities outside of Wisconsin.  Heath's lack of independent knowledge is demonstrated by the generic nature of his allegations in the Complaint.  He does not allege with particularity *any* specific instance in which *any* Defendant allegedly charged a non-LCP price.  Such conclusory allegations do not "add" to the publicly disclosed allegations in the Wisconsin Action; if anything, they *subtract* from allegations that were already held inadequate by the Wisconsin district court.  31 U.S.C. § 3730(e)(4)(B).

In an attempt to obscure his lack of independent knowledge, Heath inserts a number of allegations about past government investigations into Defendants' E-Rate practices, including

15

the investigation that resulted in the 2009 Compliance Agreement.  Compl. ¶¶ 61-80.  But Heath does not allege that he was an "original source" of any information underlying any of these investigations or that he participated in the investigations in any way.  *Id.*  Heath was simply a passive bystander who learned about those investigations from the public domain.  Thus, these allegations merely reinforce the fact that the government was well-equipped to investigate Heath's claims and that Heath's present Complaint is based on publicly disclosed information that has been known to the government for years.  Moreover, that the government chose to *settle* the 2009 Indiana investigation through the Compliance Agreement and an $8.2 million settlement provides still more reason to reject Heath's attempt to seek additional penalties now.

Finally, Heath mentions in passing an alleged 2010 "audit" purportedly conducted by the Detroit Public Schools ("DPS").  *Id.* ¶ 103.  This, too, goes nowhere.  According to Heath, the audit showed that "AT&T was not offering or billing its services at LCP, and was billing DPS at a high, non-LCP tariff rate."  *Id.*  But Heath does not allege that he performed this alleged audit or that he otherwise has any independent knowledge of the alleged findings of the audit.  *Id.* Heath cannot base his claims on a publicly disclosed audit performed by a school district.  *See Graham Cnty.*, 559 U.S. at 301 (disclosures in "a state or local report, audit, or investigation— may trigger the public disclosure bar"). Because Heath has failed to demonstrate that he is an "original source," his claims are barred by the public disclosure bar.

## II.    HEATH FAILS TO STATE A CLAIM UNDER THE FCA.

"'[B]ecause the False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply with Rule 9(b),' which requires that allegations of fraud be pled with particularity."  *Green*, 843 F. Supp. 2d at 38-39 (quoting *U.S. ex rel. Totten v. Bombardier Corp.* ("*Totten I*"), 286 F.3d 542, 551-52 (D.C. Cir. 2002)).   Under Rule 9(b)'s pleading

16

standard, Heath is required to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004). In other words, Rule 9(b) requires Heath to provide the "who, what, when, where, and how" of the alleged fraud. *Poblete v. Rittenhouse Mortg. Brokers*, 675 F. Supp. 2d 130, 134 (D.D.C. 2009).

### A.    Heath Fails to Allege Any Specific Allegedly False Claims by Defendants.

To satisfy Rule 9(b), Heath "must set forth an adequate factual basis" for his allegations that Defendants "submitted false claims (or false statements in order to get false claims paid), including a more detailed description of the specific falsehoods that are the basis for his suit." *Totten I*, 286 F.3d at 552. "[A] relator must provide details that identify particular false claims for payment that were submitted to the government." *U.S. ex rel. Brown v. Aramark Corp.*, 591 F. Supp. 2d 68, 74 (D.D.C. 2008).

Despite alleging a nationwide scheme to submit fraudulent claims, Heath does not plead a single instance of a false claim submitted to USAC. Likewise, Heath does not identify *any* rates paid by any E-Rate customer, or *any* basis for believing that the rates charged to that customer were higher than the LCP—that is, the lowest price charged to similarly situated non-residential customers purchasing similar services. Instead, Heath vaguely alleges that "[e]ach and every Form 473 submitted between 1997 and 2009 by an AT&T [service provider] was false." Compl. ¶ 87. Courts have routinely held that allegations of systematic fraud, where the relator fails to allege at least representative examples of the allegedly false claims, are insufficient. *See U.S. ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006).

17

Moreover, Heath fails to plead the particulars of any claimed LCP violation. The regulation defines LCP as "the lowest price that a service provider charges to non-residential customers who are similarly situated to a particular school, library, or library consortium for similar services." 47 C.F.R. § 54.500(f). The analysis of "similarly situated customers" and "similar services" requires more than a naked comparison of prices paid by two different customers. Rather, the customers must be in the same geographic service location, and the provider's rates may vary based on any factors that affect cost, including mileage from the switching facility, the length of the service contract and the agreed-upon traffic volumes. *In re Federal-State Joint Board on Universal Service,* Report and Order, 12 FCC Rcd. 8776, 9032-9034 at ¶¶ 486-489 (rel. May 8, 1997). Heath does not identify even a single fact that would address any of these factors, nor does he show that any particular E-Rate customers were "similarly situated" or received "similar services." His conclusory allegations are insufficient to plead an LCP violation.

In cases where a relator cannot allege the actual details of a false claim, some courts have held that the relator can nevertheless satisfy Rule 9(b) "by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). But even the cases adopting this relaxed standard still require a plaintiff to provide specific dates and claims, and require much more specificity than Heath provides. *See id.* at 190 (finding reliable indicia of false claims based on relator's allegations of specific dates and transactions); *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) (finding reliable indicia where relator "listed payment requests submitted, including the date of submission, the amount sought, and where applicable the language of the express certification in each request").

18

Here, Heath alleges no specifics of the alleged scheme to submit false claims; Heath merely asserts that Defendants failed to properly calculate the LCP – essentially, an attempt to place the burden on *Defendants* to prove a negative and show that their claims were *not* fraudulent.

In *Folliard I*, the relator alleged that defendants falsely identified certain products on a government procurement portal as originating in the United States, but never alleged that the government actually bought any of the products. 722 F. Supp. 2d 20, 30 (D.D.C. 2010). The court held that, absent an allegation that the listings were related to purchases, it could not infer the submission of false claims. *Id.* This case is the same. Heath never alleges that Defendants charged particular E-Rate customers prices in excess of the LCP. Indeed, unlike the Wisconsin Action, Heath does not even allege a basis for calculating the LCP with respect to any particular jurisdiction or public entity. Instead, Heath merely speculates that Defendants violated the LCP somewhere, for some customer, because they allegedly did not have a formal process or training program for calculating the LCP. Compl. ¶¶ 61-62. There is no legal basis to infer the submission of a false claim from such scant allegations.

Heath also fails "to identify individuals allegedly involved in the fraud" with specificity. *Williams*, 389 F.3d at 1256-57. And he provides no information as to the role of each Defendant in the alleged scheme. A "complaint must make specific allegations against each individual defendant rather than collective allegations against 'each of the above-named Defendants,' since one of the main rationales behind Rule 9(b)'s particularity requirement is to 'guarantee all defendants sufficient information to allow for preparation of a response.'" *U.S. ex rel. Bender v. N. Am. Telecomms., Inc.*, 750 F. Supp. 2d 1, 6 (D.D.C. 2010). "It is insufficient to allege a scheme against one defendant and merely ascribe similar behavior to another." *Id.* Heath alleges claims against twenty entities, but fails to ascribe any specific conduct to any of them.

19

**B.      Heath Cannot Cure his Insufficient Pleadings by Citing FCC Forms or through his "Implied" Misrepresentation Argument.**

Instead of pleading any specific instances of allegedly false claims, Heath attempts to meet his burden of pleading with particularity by arguing that Defendants allegedly made "implied" misrepresentations and also by citing to the FCC Forms submitted by service providers and E-Rate customers.  Neither of these tactics can cure Heath's deficient pleadings.

**1.      Heath fails to cure his deficient pleadings by citing to FCC Forms.**

Heath alleges that Defendants falsely certified compliance with LCP in Forms 472 and 473, and that Defendants caused E-Rate customers to falsely certify compliance in Forms 471 and 472.  Compl. ¶¶ 81-94.  As shown above, Heath's claims that AT&T falsely certified LCP compliance fail because Heath has not pled with particularity facts showing that AT&T or any of its subsidiaries failed to comply with the LCP regulation.  But even if he had alleged such facts, none of the foregoing Forms contained any certification regarding LCP, and thus none of them can support Heath's claims of express false certification.

**Form 473.**  During the relevant time period, Form 473 did not contain a certification of LCP compliance.  *See* Exhibit 4 at 1.[9]  Heath erroneously attempts to frame certain language in Lines 10 and 11 of Form 473 to make it appear that the Form contained a blanket certification that the invoices submitted to USAC have been "deemed eligible."  The actual Form, however, shows that service providers certified that the E-Rate *customer*—the school or library, *not* the provider's invoice—had been deemed eligible to participate in the E-Rate Program.  Indeed, the

---

[9]      In July 2013, Form 473 was revised to include a general certification that the submitting service provider complied with the "rules and orders" of the E-Rate Program.  FCC Form 473, ¶ 21 (available at http://www.e-ratecentral.com/formsRack/sp/forms/473_jul2013_typeIn.pdf); *see also* 78 Fed. Reg. 34096 (June 6, 2013) (noting revision to Form 473).  But Heath alleges only violations before 2009.  Compl. ¶¶ 75-77.  During that time, Form 473 contained no general compliance certification.  Indeed, the fact that the FCC recognized in July 2013 that it was "add[ing] a certification to the FCC Form 473 that requires services providers to certify compliance with all E-rate rules" demonstrates that the prior version of the form lacked such a general compliance certification.  78 Fed. Reg. 34096.

certifications tracked regulations regarding customer eligibility (47 C.F.R. § 54.501(f)(1)-(2)) that are wholly separate from the LCP regulation (which appears at § 54.511(b)).

Heath also points to the instructions for Form 473, which stated that Form 473's purpose is to confirm that invoice forms submitted by service providers comply with FCC rules. But the actual Form makes clear that the FCC chose not to require a vague certification of compliance with *all* regulations, but a specific certification of compliance with specific rules (*i.e.*, the customer eligibility rules) *other* than LCP. Thus, even assuming a basis for Heath's claim that Defendants' did not comply with the LCP regulation, Form 473 did not contain any of the "false claims" of LCP compliance that Heath alleges.

**Form 471.** Form 471 likewise contains no certifications of LCP compliance. Indeed, it contains no certifications at all by service providers. Exhibit 1. E-Rate *customers* complete Form 471 to describe the services ordered and to certify that they have complied with the competitive bidding regulations and the E-Rate program rules. (Exhibit 1, lines 28, 30.) In so doing, the customers certify that they chose the most cost-effective offer they received during the bidding process (Exhibit 1, line 27), but they do not certify that any service provider complied with LCP in submitting a bid (a certification the customer is unqualified to make). Again, the certification tracks a regulation (47 C.F.R. § 54.503(c)(2)(vii)) wholly separate and apart from the LCP regulation (§ 54.511(b)). Further, the certifications in Form 471 are not prerequisites to payment. The form does not result in any payment from the government.

**Form 472.** Finally, Form 472 is the Form by which the service provider acknowledges its promise to remit the E-Rate reimbursement to the E-Rate customer after receiving payment from USAC. Exhibit 2, Block 4. There is no certification regarding LCP compliance. The Form also contains a certification from the customer that the reimbursement sought relates to

21

eligible services received by eligible applicants (Exhibit 2, Block 3, Section A).    That certification relates to the FCC's rules defining eligible services and applicants—not service providers and not LCP.  47 C.F.R. §§ 54.501, 54.502.

In sum, none of the Forms referenced in the complaint contains a certification of compliance with LCP.  Thus, even if one accepts Heath's speculation that Defendants did not provide the LCP, none of the Forms contain any false certification with respect thereto.

**2.    Heath fails to provide sufficient details to support his allegations of "implied" false certifications.**

Heath also attempts to save his conclusory pleadings by raising a theory of "implied" misrepresentations.  Compl. ¶¶ 95–101.  Heath's use of the term "implied" is essentially an admission that he has not pled and cannot plead any specific statements or omissions on which the alleged "fraud" is based.  Heath still has not pled the "who, what, where, and when of the alleged fraud."  Instead, Heath asks the Court to "imply" fraud even though there are no specific allegations to support a finding of fraud.

First, Heath does not identify "who" from Defendants made or omitted to make statements.  The most Heath can muster is vague accusations about unnamed "AT&T employees conducting E-Rate business."  Compl. ¶ 71.  Second, Heath does not identify the persons to whom these statements were made.  Heath has not identified any specific allegedly false statements or omissions or any specific persons employed by any E-Rate eligible schools or libraries who received any false statements.  Third, Heath does not give the "when" or "where" of the allegedly fraudulent statements or omissions; only the insufficient vagary that statements were made "before 2009."  *Id.* ¶ 97.  Likewise, Heath does not identify "what" was said. Rather, Heath simply alleges that unidentified persons at Defendants have "withheld and continued to [withhold] from USAC, the schools and libraries all information about its past noncompliance

22

with LCP." *Id.* at 98. Heath does not describe what specific "information" was allegedly "withheld," who at Defendants allegedly "withheld" this information, or from whom the information was "withheld." Without such details, these allegations are insufficiently pled. *Williams*, 389 F.3d at 1256-57.

Heath only compounds these deficiencies by alleging (¶¶ 91–94) that Defendants caused *applicants* to make false statements that their purchases complied with Program rules, in various forms submitted to USAC. In the first place, Heath has failed to address the underlying problem: there are still no details to show "what" statements by Defendants caused this second (inadvertent) alleged fraud by E-Rate applicants, "who" at Defendants made those statements, or "when" or "where" those statements were made. Further, the alleged second fraud by applicants only adds another layer of non-specificity. Heath does not say which applicants made false statements or when; he simply describes generic forms that all applicants must submit, without saying *which* submissions were false. Compl. ¶¶ 91-94. And, as discussed above, the forms Heath references do not contain any statements or certifications about LCP.

## III.   THE COURT SHOULD DISMISS HEATH'S STATE AND LOCAL CLAIMS.

In addition to his federal claims, Heath asserts copycat claims under the false claims statutes of 17 states, the District of Columbia, and the cities of Chicago and New York. Compl. ¶¶ 113-311. He asks the Court to take "supplemental jurisdiction" over these claims, and admits they are "predicated upon the same exact facts" as his federal FCA claim. Compl. ¶¶ 122, 131, 141, 151, 161, 171, 181, 191, 201, 211, 221, 231, 241, 251, 261, 271, 281, 291, 301, 311).

### A.   This Court Should Decline to Exercise Pendent Jurisdiction.

As an initial matter, because Heath's federal claims are inadequate, this suit has no federal toehold and the Court should decline to assert jurisdiction over his non-federal claims.

"Pendent jurisdiction is a doctrine of discretion, not a plaintiff's right." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005).  "In the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 424 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs.*, 778 F. Supp. 2d 37, 54-55 (D.D.C. 2011) (declining to exercise pendent jurisdiction after granting dismissal in FCA case).  Given that Heath's federal claims must be dismissed and that this case is still at the pleading stage, judicial economy, convenience, fairness, and comity weigh in favor of declining jurisdiction over the state and local claims.

### B.    Heath's State Claims are Barred by Each Act's First-to-File Bar.

As described *supra* in Section I.A., Heath's federal FCA claims should be dismissed under the first-to-file bar because Heath alleges the same essential facts asserted in the Wisconsin Action, and the Wisconsin Action was pending when Heath filed this case.  The same result follows with respect to Heath's state and local claims.

Fourteen of the state and local false claims acts contain first-to-file bars with language materially identical to the federal FCA's first-to-file bar.[10]  The first-to-file bars of the six other states and localities are *more stringent* than the federal bar.  The D.C., Florida, Indiana, Minnesota, and Nevada bars apply even if the second action is not "related" to the first,[11] and the

---

[10]    Cal. Gov. Code § 12650(c)(10); Del. Code Ann. tit. 6, § 1203(b)(5); Haw. Rev. Stat. § 661-25(e); Ill. Comp. Stat. Ann. 175/4(b)(5); Mass. Gen. Laws ch. 12, § 5C(6); Mont. Code Ann. § 17-8-406(7); N.J. Stat. Ann. § 2A:32C-5(i); N.M. Stat. Ann. § 44-9-5(E); N.Y. State Fin. Law § 190(4); N.C.G.S. § 1-608(b)(5); R.I. Gen. Laws § 9-1.1-4(b)(5); Tenn. Code Ann. § 4-18-104(c)(10); Va. Code Ann. § 8.01-216.5(E); Chicago Mun. Code § 1-22-030(b)(5).  The New York State bar contains an exception if the later filer obtains permission from the state Attorney General, but Heath has not alleged such permission.

[11]    D.C. Code § 2-381.03(b)(6); Fla. Stat. § 68.083(7); Ind. Code § 5-11-5.5-4(g); Minn. Stat. § 15C.05(b); Nev. Rev. Stat. Ann. § 357.080(2).

24

Indiana, Nevada, and New York City bars apply even if the first suit is not "pending" when the second action is filed.[12] The federal first-to-file bar requires dismissal of the federal FCA claims, and the state and local first-to-file bars require dismissal of the identical state and local claims.

### C.    Heath's State Claims are Barred by Each Act's Public Disclosure Bar.

As described *supra* in Section I.B., Heath's federal FCA claims should be dismissed under the public disclosure bar because they are based on publicly disclosed information, and Heath has not established that he is an original source of that information. The same result follows under all but one of the state and local false claims acts.[13]

Five of the state and local false claims acts contain public disclosure bars with language materially identical to the federal FCA's public disclosure bar.[14] Like the federal FCA, those statutes bar claims "based upon . . . allegations or actions" already publicly disclosed in government hearings, reports, or the news media unless the relator "is an original source."

Fourteen other jurisdictions use language that is *more difficult* for a relator to satisfy.[15] Seven of these statutes define "original source" as an "individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information" to the government "before filing an action." This is more stringent than the post-PPACA federal test, which requires only "knowledge that is independent of and materially adds to the publicly disclosed allegations." 31 U.S.C. § 3730(e)(4)(B).

---

[12]    Ind. Code § 5-11-5.5-4(g); Nev. Rev. Stat. Ann. § 357.080(2); N.Y.C. Code § 7-804(f)(1).

[13]    Defendants are not asserting a public disclosure bar to Heath's claim under the New Mexico false claims act because the public disclosure provision of that statute applies only upon a motion brought by the New Mexico Attorney General. N.M. Stat. § 44-9-9(D). However, like Heath's other state claims, his New Mexico claim is subject to dismissal under the first-to-file bar and Rules 9(b) and 12(b)(6).

[14]    Haw. Rev. Stat. § 661-31(b)-(c); 740 Ill. Comp. Stat. 175/4(e)(4); Mass. Gen. Laws ch. 12, §§ 5A(a), 5G(3); N.Y. State Fin. Law §§ 188(7), 190(9)(b); Va. Code Ann. § 8.01-216.8.

[15]    Del. Code tit. 6, § 1206(c); Fla. Stat. § 68.087(3); Ind. Code § 5-11-5.5-7(f); N.C. Gen. Stat. § 1-611(d); N.J. Stat. § 2A:32C-9(c); R.I. Gen. Laws §§ 9-1.1-4(e)(4); Chi. Mun. Code § 1-22-030(f).

Six other states or localities draw the original source exception even more narrowly.[16]  To qualify as an original source in those states, the relator must show, in addition to the other requirements, that the information provided to the government was the "basis" or "catalyst" for the investigation that led to the public disclosure.  Similarly, under New York City's false claims act, a relator whose complaint derives from publicly disclosed information must show that he was "the primary source" of the information.  N.Y.C. Admin. Code § 7-804(d)(3).  Because Heath cannot show that he was an "original source," he cannot meet the higher burden of showing that he was "the primary source."

**D.    Heath's State Claims Should be Dismissed Under Rules 9(b) and 12(b)(6).**

As described *supra* in Section II, Heath's federal claims should be dismissed under Rules 9(b) and 12(b)(6) because his claims lack particularity.  The same flaws doom Heath's state and local claims.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action.").  The state and local false claims acts all have the same substantive elements as the federal FCA.[17]  Heath pleads no additional facts to support his state and local claims beyond those pled to support his federal claims.  Instead, he merely incorporates the same factual allegations.  For the reasons discussed above with respect to the federal FCA, Heath's

---

[16]     Cal. Gov. Code § 12652(d)(3)(B); D.C. Code § 2-381.03(c)(2)(B); Minn. Stat. §§ 15C.01, 15C.05(c)(3); Mont. Code § 17-8-403(5)(c); Nev. Stat. § 357.100(2); Tenn. Code § 4-18-104(d)(3)(B).

[17]     Cal. Gov. Code § 12651(a); Del. Code Ann. tit. 6, § 1201(a); D.C. Code § 2-381.02(a); Fla. Stat. § 68.082(2); Haw. Rev. Stat. §§ 661-21(a); 740 Ill. Comp. Stat. 175/3(a)(1); Ind. Code § 5-11-5.5-1; Mass. Gen. Laws ch. 12, § 5B(a); Minn. Stat. § 15C.02(a); Mont. Code Ann. § 17-8-403(1); N.C. Gen. Stat. § 1-607(a); Nev. Rev. Stat. § 357.040(1); N.J. Stat. Ann. § 2A:32C-3; N.M. Stat. § 44-9-3(A); N.Y. State Fin. Law § 189(1); R.I. Gen. Laws § 9-1.1-3(a); Tenn. Code Ann. § 4-18-103(a); Va. Code Ann. § 8.01-216.3(A); Chi. Mun. Code § 1-22-020; N.Y.C. Code § 7-803(a).

allegations fail the pleading requirements of Rules 9(b) and 12(b)(6), and his threadbare recitations of the elements of the state and local claims in Counts II to XXI are insufficient.[18]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted and Heath's Complaint should be dismissed in its entirety with prejudice.

Dated:  January 7, 2014                                    Respectfully submitted,

                                                  By:   /s/ David F. Dowd

David F. Dowd                                        Michael J. Gill
Mayer Brown LLP                                      (to be admitted *pro hac vice*)
1999 K Street, Northwest                             Demetrios G. Metropoulos
Washington, DC 20006                                 (to be admitted *pro hac vice*)
(202) 263-3000 (phone)                               Mayer Brown LLP
(202) 263-3300 (fax)                                 71 South Wacker Drive
                                                     Chicago, Illinois 60606
                                                     Telephone (312) 782-0600
                                                     Facsimile (312)  701-7711

                                                     *Attorneys for Defendants*

---

[18]    Additionally, for the state and local claims, the Court should decline to exercise supplemental jurisdiction over nonresident Defendants who do not have sufficient minimum contacts with the District of Columbia. *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 4-5 (D.C. Cir. 1977) (court has discretion to dismiss pendent claims upon "considerations of judicial economy, convenience and fairness to litigants").