UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
JUN 1 0 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> *ex rel.* TODD HEATH, *et al.* ) <br> ) <br> Plaintiffs/Relator, ) <br> ) <br> v. ) <br> ) <br> AT&T, Inc., *et al.* ) <br> ) <br> Defendants. ) | Case No. 11-cv-1897 (RJL) |

## MEMORANDUM OPINION
(June 6, 2014) [Dkt. #33]

Plaintiff-relator Todd Heath brings suit under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729-3732, on behalf of the United States government, seventeen states, the District of Columbia, and two cities against AT&T, Inc. and nineteen wholly-owned subsidiaries (together, the "AT&T defendants").[1] Compl. [Dkt. #1]. Heath alleges AT&T, Inc. and its regional operating companies fraudulently overbilled school districts and libraries from 1997 through 2009 for telecommunications services provided as part of the federal E-Rate program. *Id.*

---

[1] The complaint brings claims on behalf of the following states and localities: California, Delaware, Florida, Hawaii, Illinois, Indiana, Massachusetts, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Rhode Island, Tennessee, Virginia, the District of Columbia, Chicago, and New York City. The United States, California, Florida, Illinois, Massachusetts, New York, New Jersey, North Carolina, Tennessee, and the District of Columbia have declined to intervene. The other named states have not made their position known. *United States ex rel. Heath v. AT&T, Inc.*, No. 1:11-cv-1897 at Dkt. #6-10, 12-14, 25.

1

Defendants move to dismiss the complaint on a number of grounds. Among them is that this court lacks jurisdiction to hear the United States False Claims Act claim because Heath previously had filed a complaint in the Eastern District of Wisconsin alleging the same fraud by AT&T's Wisconsin operating company, thereby barring this action under the Act's "first-to-file" rule.[2] Defs.' Mot. to Dismiss Relator's Compl. 1 [Dkt. #33]. In addition, the AT&T defendants argue that this Court should decline to exercise pendant jurisdiction over Heath's state and local claims. *Id.* For the reasons discussed herein, defendants' motion will be GRANTED.

## BACKGROUND

Pursuant to the Telecommunications Act of 1996, the Federal Communications Commission established what is commonly referred to as the Education Rate, or E-Rate, program to subsidize telecommunications and internet services provided to needy schools and libraries. Compl. ¶¶1, 46. Eligible schools and libraries can receive reimbursement from the federal Universal Service Fund for between 20 to 90 percent of the cost of certain services. *Id.* ¶47. The program has many requirements, both for the applying schools or libraries and for the bidding service providers. *Id.* Among them is the requirement that service providers bidding for a school or library's contract bid at no higher than their "lowest corresponding price" ("LCP"): the lowest price charged for services to similarly situated customers. *Id.*; *see* 47 C.F.R. §§ 54.500(f), 54.511(b)

---

[2] Defendants also argue that the False Claims Act claim is barred by the Act's public disclosure bar and that the Complaint fails to meet the pleading requirements of Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). Mot. to Dismiss [Dkt. #33]. Because the claim is barred by the first-to-file rule, I need not and do not reach the AT&T defendants' arguments regarding public disclosure and failure to satisfy the pleading requirements.

(2013). An applicant selects a service provider, enters into a contract, and submits a request for funding to the Universal Service Administrative Company, which is overseen by the FCC. Compl. ¶¶1, 47. If the request is approved, either the applicant or the service provider can submit invoices to the USAC for reimbursement. *Id.* ¶47.

In 2008, Todd Heath brought an action in the Eastern District of Wisconsin under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729-3732, against the AT&T operating company serving Wisconsin, Wisconsin Bell, Inc. Complaint, *United States ex rel. Heath v. Wisconsin Bell, Inc.*, No. 2:08-cv-0876 (E.D. Wis. Oct. 16, 2008) ("Wis. Compl."). Heath alleged that Wisconsin Bell entered into E-Rate contracts with Wisconsin school districts and libraries, but charged them rates above the LCP in violation of program requirements. *Id.* ¶¶28-35. Specifically, he claimed that Wisconsin Bell (which he called "AT&T" throughout the complaint) had entered into an agreement with the Wisconsin Department of Administration to state departments and agencies at specified rates, but withheld information about those rates from schools and libraries and billed most of them at higher rates. *Id.* ¶¶31-35. The complaint was dismissed under the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), which disallows actions based on certain types of publically-disclosed information. *See United States ex rel. Heath v. Wisconsin Bell, Inc.*, No. 2:08-cv-00724, 2012 WL 4128020 (E.D. Wis. Sept. 18, 2012). It is currently on appeal in the Seventh Circuit. *See* Docket, *United States ex rel. Heath v. Wisconsin Bell, Inc.*, No. 12-3383 (7th Cir.).

Despite his lack of success in Wisconsin—or, more likely, because of it—Heath brought this *qui tam* action in 2011. He alleges that AT&T, Inc., and all of its operating

3

companies (including Wisconsin Bell) violated the United States False Claims Act and related state statutes by submitting program certification and reimbursement forms while failing to comply with LCP requirements. This practice persisted from the program's inception in 1997 until 2009, when AT&T, Inc. revamped its E-Rate program to include a template for service providers to use to determine LCP. Compl. ¶¶61-62, 76. Heath recites a history of complaints against and investigations into AT&T operating companies' E-Rate program compliance in Connecticut, Missouri, and Indiana, as well as Heath's previous Wisconsin action. *Id.* ¶¶63-75. The complaint points to one example of alleged overbilling in Detroit, *id.* ¶¶103-105, but does not provide any examples of specific instances in other states.

## ANALYSIS

The False Claims Act allows a private individual to bring a *qui tam* civil suit on behalf of the government. 31 U.S.C. § 3730(b)(1). However, "a relator's failure to clear the necessary statutory hurdles deprives the court of its power to hear the relator's claims." *United States ex rel. Batiste v. SLM Corp.*, 740 F. Supp. 2d 98, 101 (D.D.C. 2010) *aff'd*, 659 F.3d 1204 (D.C. Cir. 2011). The plaintiff bears the burden of establishing the court's jurisdiction under Federal Rule of Civil Procedure 12(b)(1), but the court may consider information outside of the pleadings in making its determination. *Id.*

The statute encourages whistle-blowers by awarding successful relators with a portion of any damages recovered. 31 U.S.C. §3730(d); *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994). At the same time, the statute

4

restricts would-be plaintiffs from bringing, or the federal courts from hearing, certain types of claims that would otherwise fall within the purview of the statute. *See* 31 U.S.C. § 3730. Together, these provisions reflect "congressional efforts to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior." *Springfield*, 14 F.3d at 651. Although the AT&T defendants raise two of these statutory jurisdictional bars in its motion to dismiss, I need address only one of them here: the "first-to-file" bar, 31 U.S.C. § 3730(b)(5).

The False Claims Act's first-to-file bar precludes successive *qui tam* actions based on the same allegations of fraud: "When a person brings [a *qui tam* action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). This restriction must be considered in the context of the "twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own." *Springfield*, 14 F.3d at 651; *see United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1208 (D.C. Cir. 2011) (quoting *Springfield*); *United States ex rel. Hampton v. Columbia/HCA Healthcare*, 318 F.3d 214, 217 (D.C. Cir. 2003) (same). Our Circuit has interpreted § 3730(b)(5) as barring "any action incorporating the same material elements of fraud as an action filed earlier," *Hampton*, 318 F.3d at 217, even when the same relator brings both actions, *United States ex rel. Shea v. Cellco Partnership*, No. 12-7133, 2014 WL 1394687 at *4 (D.C. Cir. Apr. 11, 2014). The later action need not rest on "identical facts" to be dismissed, and "mere[] variations" on the fraud described in the first-filed complaint do not suffice to get past the bar. *Hampton*,

5

318 F.3d at 218. Instead, the court looks into whether the first complaint would have equipped the government to investigate the fraud alleged in the later complaint. *Batiste*, 659 F.3d at 1209.

Here, the AT&T defendants argue that this action is "related" to Heath's Wisconsin action because the Wisconsin action was sufficient to put the government on notice about the fraud alleged here. Mem. in Support of Mot. to Dismiss 6-11 [Dkt. #33-2]; Reply Mem. 3-9 [Dkt. #36]. Heath contends that the defendants and scope of the fraud alleged in this action differ materially from his previous Wisconsin action. Opp. to Mot. to Dismiss 10 [Dkt. # 35]. He argues that because the Wisconsin action did not allude to a broader fraud reaching beyond Wisconsin or being perpetrated by any non-named corporate entities, the rule is inapplicable. *Id.* I disagree.

Whether an action is "related" to a previous action under the meaning of § 3730(b)(5) is a case-by-case inquiry. *See United States ex rel. Folliard v. CDW Tech. Servs., Inc. ("Folliard II")*, 722 F. Supp. 2d 37, 39 (D.D.C. 2010) (explaining that "there is no bright line rule for determining whether differences between complaints are 'material'"). Much of Heath's first-to-file argument focuses on distinguishing other cases in this Circuit and District on their facts. Opp. to Mot. to Dismiss 8-10. But previous instances in which courts have found actions to be related, such as *Hampton*, *Batiste*, and *Folliard II*, do not define the universe of such cases. The operative question is "whether [this] Complaint alleges a fraudulent scheme the government already would be equipped to investigate based on the [Wisconsin] Complaint." *Batiste*, 659 F.3d at 1209. Unfortunately for the plaintiff, it does. How so?

6

There is no debate that the methodology of the accused fraud is the same in both actions. Heath accuses AT&T-subsidiary service providers of failing to calculate and charge the LCP as required by the E-Rate program, thereby overbilling eligible schools and libraries and getting reimbursed by the federal government for those inflated charges. The instant complaint does not direct an investigation into a different type of fraud, a different time period, or different victims than the original Wisconsin complaint.

The only apparent difference is the identity of the allegedly fraudulent actors. It is clear that the mere act of naming different defendants in the later-filed complaint is not sufficient to survive the bar. *Hampton*, 318 F.3d at 218. The different defendants would have to be actors the government was not equipped to investigate after the first complaint and investigation. Here, Heath names only AT&T, Inc., and its subsidiaries—all corporate entities closely associated with Wisconsin Bell and participating in the same federal program.

Wisconsin Bell's relationship to parent AT&T, Inc. is readily apparent from the face of the Wisconsin complaint. Wis. Compl. ¶4. The Wisconsin complaint even defines the defendant as "AT&T." *Id.* Furthermore, AT&T is a nationally-known brand that provides telecommunications services all over the country. Any federal personnel or agency considering or investigating Heath's allegations against Wisconsin Bell would be aware of the fact that there are many other state or regional AT&T operating companies that provide precisely the same services and are owned and controlled by the same parent.

The Wisconsin complaint also makes clear that the E-Rate program is a national one. The administering agency, the USAC, certainly knew the nature of its program and the identities of its eligible service providers. Heath emphasizes that the government was aware of complaints against other AT&T operating companies regarding E-Rate program implementation. Compl. ¶¶63-75. The government certainly was aware that other AT&T operating companies were similarly situated to Wisconsin Bell. Upon learning of allegations that Wisconsin Bell did not have a practice of charging LCPs, a logical step would be to see if there was an organization-wide practice or procedure outlined by parent AT&T, Inc., and whether other AT&T operating companies were abiding by the rules.

There may well be situations in which fraud allegations against a single subsidiary would not equip the government to investigate a broader scheme involving related corporate entities, but this is not one of them. The nature of the corporate relationship and the government program at issue mean the government here did not need a private individual to allege a broader scheme in order for it to identify one. "[T]he allegations and legal theory of [the Wisconsin action] would alert the government to the possibility of a fraudulent scheme that went beyond the specifics of [that action]" and equip it to investigate the expanded allegations. *Cellco Partnership*, 2014 WL 1394687 at *3. Thus, the False Claims Act's first-to-file rule bars the United States False Claims Act claim in the instant complaint. The complaint brings no other federal claims, and I decline to exercise jurisdiction over the remaining state and local law claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Relators Complaint [Dkt. #33] is GRANTED, and plaintiff-relator's claims for relief are DISMISSED. An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge